# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL 3707,<br><br>AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>and<br><br>NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,<br><br>          *Plaintiff*s,<br><br>          v.<br><br>CHARLES EZELL, in his official capacity as Acting Director of the Office of Personnel Management,<br><br>and<br><br>OFFICE OF PERSONNEL MANAGEMENT,<br><br>          *Defendants*. | CIVIL ACTION NO. 1:25-cv-10276 |

**BRIEF OF AMICI CURIAE STATES OF HAWAIʻI, MASSACHUSETTS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, WASHINGTON, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

## INTRODUCTION AND INTERESTS OF AMICI

The States of Hawaiʻi, Massachusetts, Arizona, California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, and the District of Columbia ("Amici States") are home to hundreds of thousands of federal employees, many of whom are members of Plaintiffs and their local affiliates.  These employees not only provide important government services to Amici States and their residents, but are part of our families and communities.

Amici States and their residents routinely rely on partnerships with federal employees and the expertise of the federal workforce for delivery of critical services.  The Fork Directive disrupts these relationships and undermines the stability of federal agencies and services, potentially inhibiting Amici States'—and our country's—ability to respond to natural disasters, care for veterans, and enforce violations of federal law, to name only a few examples.  It also forces our Nation's public servants—many with decades of experience and a wealth of institutional knowledge—to make a choice of tremendous potential consequence with minimal, constantly shifting information, all with thinly veiled threats of possible termination hanging over their heads. Because of the serious potential consequences of this Directive, Amici States emphasize that the balance of the equities and the public interest weigh sharply against Defendants and in favor of granting Plaintiffs' application for a temporary restraining order.

## ARGUMENT

For much of the nineteenth century, federal jobs were distributed based on the "spoils system[,]" under which each incoming administration would award positions as a form of political patronage, rather than on the basis of merit.  *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 557–58 (1973).  That began to change in 1883, when Congress passed the

Pendleton Civil Service Reform Act, requiring "competitive examinations" to determine the "capacity and fitness" of federal employees.  Ch. 27, § 2, 22 Stat. 403, 403–04 (1883).  Civil service protections included in the Pendleton Act were strengthened over the next century, culminating in the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978).

Justice William O. Douglas called the civil service system "'the one great political invention' of nineteenth century democracy." *Konno v. Cty. of Haw.*, 937 P.2d 397, 404–05 (Haw. 1997) (quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 121 (1947) (Douglas, J., dissenting in part)).  "The civil service . . . embodies positive principles of public administration such as openness, merit, and independence." *Id.* at 404.

The Fork Directive undermines these principles, in keeping with the Administration's apparent desire to root out federal employees who are insufficiently "loyal."  *See* Exec. Order No. 14,171, 90 Fed. Reg. 8,625 (Jan. 20, 2025) ("Accountability is essential for all Federal employees, but it is especially important for those who . . . shape and implement actions that have a significant impact on all Americans.  Any power they have is delegated by the President, and they must be accountable to the President[.] . . . . Principles of good administration, therefore, necessitate action to restore accountability to the career civil service[.]"); *Fork in the Road*, U.S. Off. of Personnel Mgmt., https://www.opm.gov/fork ("The federal workforce should be comprised of employees who are reliable, loyal, trustworthy, and who strive for excellence in their daily work.").

Yet even accepting that apparent goal, Defendants inadequately account for the massive chaos and disruption the Fork Directive has and will continue to cause.  For Amici States, a sudden diminishment of the federal workforce and the attendant loss of experience and expertise could have catastrophic consequences.  Amici States routinely rely on support from federal agencies and programs in numerous critical areas.  *See, e.g.*, Gillian E. Metzger, *Agencies, Polarization, and the States*, 115 Colum. L. Rev. 1739, 1765 (2015) ("Cooperative federalism represents the reality of

U.S. governance.  In both regulatory and social welfare contexts, state governments work 'cheek to jowl' with federal agencies in enforcing regulations and implementing national programs."); *The Critical Role of Federal Partnerships with States & Local Governments During COVID-19*, U.S. Gov't Accountability Off. (Sept. 9, 2020), https://www.gao.gov/blog/critical-role-federal-partnerships-states-local-governments-during-covid-19 ("Partnerships between federal and local entities are key to achieving national goals for education, health care, transportation, and homeland security, as well as responding to emergencies such as hurricanes or—more recently— the coronavirus pandemic.").

For example, state and federal partnerships were crucial in the wake of the August 2023 wildfires on the island of Maui, a federally declared major disaster that killed at least 102 people, destroyed more than 2,200 structures, and caused about $5.5 billion in damages.  *See* UL Fire Safety Research Institute, *Lahaina Fire Incident Analysis Report* (Sept. 13, 2024), at 164, https://d1gi3fvbl0xj2a.cloudfront.net/2024-10/FSRI_Lahaina_Report__Redactions_10022024_Rev1%20(1).pdf;    U.S.    Fire    Admin., *Preliminary    After-Action    Report:    2023    Maui    Wildfire* (2024), https://www.usfa.fema.gov/blog/preliminary-after-action-report-2023-maui-wildfire/.    Federal Emergency Management Agency (FEMA) personnel mobilized urban search and rescue capabilities, incident management staff, and other initial responders to provide vital assistance to state and local authorities.  *Assessing the Federal Government's Response to the 2023 Maui Wildfires: Hearing Before the Subcomm. on Gov't Operations & the Fed. Workforce of the H. Comm. on Oversight & Accountability*, 118th Cong. 2 (2024) (statement of Robert Fenton, Regional Administrator, FEMA).  FEMA worked with the Governor of Hawaiʻi and the Mayor of Maui County to address unique, local obstacles to providing temporary housing, and led the effort to remove hazardous debris with the assistance of partner agencies, including the Environmental

Protection Agency, the Coast Guard, and the Army Corps of Engineers. *Id.* at 2–3. One year out from the disaster, FEMA maintained 210 employees on the ground in Maui, and was actively hiring for 129 positions to assist in the long-term recovery effort. *Id.* at 4. These kinds of disaster recoveries, along with preparations for future ones, are undermined by attempts to hollow out federal agencies through the Fork Directive's confusing, poorly explained, and arbitrarily time-limited offer.

Amici States are also home to hundreds of thousands of military veterans[1] that rely on critical services from the Department of Veterans Affairs (VA), one of the largest employers in the federal government that runs a network of hospitals and health clinics across the country. VA facilities already face severe staffing shortages. *See* U.S. Dep't of Veterans Affairs, Office of Inspector General, VA OIG 24-00803-222, OIG Determination of Veterans Health Administration's Severe Occupational Staffing Shortages Fiscal Year 2024 (2024), https://www.vaoig.gov/sites/default/files/reports/2024-08/vaoig-24-00803-222.pdf (in fiscal year 2024, VA facilities reported "a total of 2,959 severe occupational staffing shortages," 86% of facilities "reported severe occupational staffing shortages for Medical Officer," and 82% of facilities "reported severe shortages for Nurse," with psychology being "the most frequently reported severe clinical occupational staffing shortage"). The Fork Directive threatens to further exacerbate an already delicate situation, compromising care for our veteran residents. *See, e.g.*, Carla K. Johnson, et al., *VA nurses are in short supply. Unions say Trump's deferred resignation*

---

[1] Hawai'i alone is home to approximately 104,000 military veterans, with about 40% of that population over age 65. *Hawaii: Distribution of Veterans by County (FY2023)*, U.S. Dep't of Veterans Aff., https://www.data.va.gov/stories/s/NCVAS-State-Summary-Hawaii-FY2023/hwwu-i9si/. And approximately 1.5 million veterans—about 47% over age 65—call California home. *California: Distribution of Veterans by County (FY2023)*, U.S. Dep't of Veterans Aff., https://www.data.va.gov/stories/s/NCVAS-State-Summary-California-FY2023/js9q-3wam/.

*plan could make things worse*, Associated Press, Feb. 5, 2025, https://apnews.com/article/nurses-military-veterans-affairs-trump-deferred-resignation-c6b6969c49038bf1359d6980cd1cae0d.

Only on Friday did there seem to be some recognition of this problem, with reporting indicating that an email was circulated to VA staff about categories of employees now ineligible for the Fork Directive. *See* Carla K. Johnson, *Veterans Affairs deems more than 130 occupations ineligible for Trump's deferred resignation plan*, Associated Press, Feb. 7, 2025, https://apnews.com/article/nurses-military-veterans-affairs-trump-deferred-resignation-ffa1c70b56c90e7f03a832a6300d280b.  It is unclear what will happen to any VA employees who accepted the Fork Directive's offer before this reversal, and even the new exemptions have caused confusion.  *See id.* (nurse stating that the "'rules are changing day to day'").

Similar concerns apply to the Social Security Administration (SSA). Social Security beneficiaries reside in every state and rely on the program's benefits for essential financial support. For most beneficiaries, Social Security is their largest source of income; without it, nearly 4 in 10 adults aged 65 and older would have incomes below the official poverty line. *Policy Basics: Top Ten Facts about Social Security*, Ctr. on Budget & Pol'y Priorities (May 31, 2024), https://www.cbpp.org/research/social-security/top-ten-facts-about-social-security.   Even before the Fork Directive, SSA's workforce had shrunk to a 27-year low, and multiple Social Security offices were "teetering on the brink of having too few staff to stay open and to serve the public[.]" Andy Markowitz, *Social Security Chief Warns Local Offices Could Buckle Amid Staff Woes*, AARP, June 3, 2024, https://www.aarp.org/retirement/social-security/info-2024/local-office-staff-shortages.html (quoting then-SSA Commissioner Martin O'Malley).  The Fork Directive will likely deepen this understaffing crisis, making it harder for Amici States' elderly and disabled populations to resolve issues relating to their benefits and potentially requiring state services to provide emergency support.

Amici States also rely on dependable federal air travel security to ensure the safety of their residents and visitors.  The Fork Directive states that only military personnel, postal workers, and immigration enforcement and national security employees are categorically exempt from deferred resignation, but employees of the Transportation Security Administration (TSA) were reportedly told, only after the Directive's issuance, that they are not eligible to participate.   Mary Schlangenstein, *TSA Workers Were Told They Can't Take Musk's 'Buyout' Offer*, Bloomberg News, Feb. 6, 2025, https://www.bloomberg.com/news/articles/2025-02-06/tsa-workers-were-told-they-can-t-take-musk-s-fork-in-the-road.  It remains unclear whether TSA employees who responded to the Fork Directive before this "clarification" will be able to enforce its terms.  *See id.* (quoting the message to TSA employees, which said that "Enterprise Support" would "coordinate" with employees who responded to the Fork Directive email).  This unnecessary confusion—in an area as vital as air travel safety—underscores why immediate relief is in the public interest.

Finally, Amici States share serious concern with the coercive nature of Defendants' exploding offer to federal employees.  The federal workforce was provided mere days to consider a proposal—affecting their careers and livelihoods—with unclear, ever-evolving terms.  *See, e.g.*, Compl. ¶¶ 39, 42–51.  Nor is it even clear which federal workers are eligible for the offer in the first place.  *See, e.g.*, Peter Charalambous, et al., *Some government employees dismayed after Musk jokes about buyout offer*, ABC News, Jan. 29, 2025, https://abcnews.go.com/US/government-employees-dismayed-after-musk-jokes-buyout-offer/story?id=118233191  ("Foreign service officers within the State Department received the 'fork in the road' email, but so far, State Department officials have been unable to provide their 16,000-person workforce a clear answer on whether they're eligible to take it[.]").  The information imbalance is extreme.  *See, e.g.*, Makena Kelly, *DOGE Staff Had Questions About the 'Resign' Email. Their New HR Chief Dodged Them*,

Wired, Feb. 1, 2025, https://www.wired.com/story/doge-hr-elon-musk-resignation-fork-road-leaked-staff-meeting/ (DOGE's HR representative, when asked about additional details on the Fork Directive, stating: "You know, I think the information that you're going to have about this is available to you right now, and again, you're just gonna have to make a personal decision based on the information that's available to you right now."). And all this chaos and confusion proceeds alongside thinly veiled threats of possible future termination. *Fork in the Road*, U.S. Off. of Personnel Mgmt., https://www.opm.gov/fork ("[T]he majority of federal agencies are likely to be downsized through restructurings, realignments, and reductions in force."); *id.* ("At this time, we cannot give you full assurance regarding the certainty of your position or agency but should your position be eliminated you will be treated with dignity and will be afforded the protections in place for such positions."); *Frequently Asked Questions*, U.S. Off. of Personnel Mgmt., https://www.opm.gov/fork/faq ("The federal workforce is expected to undergo significant near-term changes. As a result of these changes (or for other reasons), you may wish to depart the federal government on terms that provide you with sufficient time and economic security to plan for your future."). The balance of the equities and the public interest plainly do not favor permitting the arbitrarily short deadline on this coercive and opaque Fork Directive to continue to run, especially given the centrality of the federal workforce to the operation of our system of government.

## **CONCLUSION**

For the foregoing reasons, and for those set forth in Plaintiffs' memorandum, Plaintiffs' application for a temporary restraining order should be granted.

Respectfully submitted,

**ANNE E. LOPEZ**
*Attorney General for the State of Hawaiʻi*

By: /s/ Kalikoʻonālani D. Fernandes
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
Thomas J. Hughes
Deputy Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

**KRIS MAYES**
*Attorney General for the State of Arizona*
2005 N. Central Ave
Phoenix, AZ 85004

**ROB BONTA**
*Attorney General for the State of California*
1300 I Street
Sacramento, CA 95814

**PHILIP J. WEISER**
*Attorney General for the State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

**WILLIAM TONG**
*Attorney General of the State of Connecticut*
165 Capitol Ave
Hartford, CT 06106

**KATHLEEN JENNINGS**
*Attorney General for the State of Delaware*
820 N. French St.
Wilmington, DE 19801

**ANDREA JOY CAMPBELL**
*Attorney General for the Commonwealth of Massachusetts*

By: /s/ Hannah C. Vail
Katherine Dirks
Deputy Chief, Government Bureau
Hannah Vail
Assistant Attorney General, Trial Division
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
hannah.vail@mass.gov
katherine.dirks@mass.gov

**BRIAN L. SCHWALB**
*Attorney General for the District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

**KWAME RAOUL**
*Attorney General for the State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

**AARON M. FREY**
*Attorney General for the State of Maine*
6 State House Station
Augusta, ME 04333

**ANTHONY G. BROWN**
*Attorney General for the State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

**DANA NESSEL**
*Attorney General for the State of Michigan*
P.O. Box 30212
Lansing, MI 48909

**KEITH ELLISON**
*Attorney General for the State of Minnesota*
102 State Capitol
75 Dr. Rev. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

**AARON D. FORD**
*Attorney General for the State of Nevada*
100 North Carson Street
Carson City, NV 89701

**MATTHEW J. PLATKIN**
*Attorney General for the State of New Jersey*
25 Market Street
Trenton, NJ 08625

**LETITIA JAMES**
*Attorney General for the State of New York*
28 Liberty Street
New York, NY 10005

**JEFF JACKSON**
*Attorney General for the State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

**DAN RAYFIELD**
*Attorney General for the State of Oregon*
1162 Court Street NE
Salem, OR 97301

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*
150 South Main Street
Providence, RI 02903

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*
109 State Street
Montpelier, VT 05609

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*
P.O. Box 40100
Olympia, WA 98504

## <u>CERTIFICATE OF SERVICE</u>

    I, Hannah C. Vail, hereby certify that I have this day, February 9, 2025, served the foregoing document upon all parties of record, by electronically filing to all ECF-registered parties and by sending a copy, first-class mail, postage prepaid to all unregistered parties.

*/s/ Hannah C. Vail*
Hannah C. Vail
