**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> CHARLES EZELL, ACTING DIRECTOR, OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> *Defendants*. | Civil Action No. 1:25-cv- 10276-GAO |

**BRIEF OF *AMICI CURIAE* FORMER PUBLIC OFFICIALS
AND LEGAL SCHOLARS IN SUPPORT OF PLAINTIFFS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTEREST AND IDENTITY OF AMICI .................................................................................1

INTRODUCTION AND SUMMARY ........................................................................................3

ARGUMENT ................................................................................................................................6

I. The Implied Thunder Basin Jurisdictional Channeling Doctrine Must be Implemented Cautiously and Only as Necessary to Effectuate Congressional Intent, Rather Than as a Tool to Insulate Unlawful Agency Action from Review ...................................................................................................................................6

II. Congress Intended the Administrative Procedure Act to Command Judicial Review of OPM's Arbitrary, Capricious, and Unlawful Program Targeting All Federal Employees Across Agencies ..................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ...................................................................................................... 10

*AFGE v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019) ....................................................................................... 12

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ..................................................................................................... 6, 7

*Axon Enterprises, Inc. v. Federal Trade Commission*,
    598 U.S. 175 (2023) .................................................................................................. *passim*

*Biden v. Texas*,
    597 U.S. 785 (2022) ..................................................................................................... 8, 9

*Buck v. Am. Airlines, Inc.*,
    476 F.3d 29 (1st Cir. 2007) ............................................................................................. 6

*Cohens v. Virginia*,
    19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821) ................................................................... 7

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) ............................................................................................... 5, 9, 10

*Department of Homeland Security v. Regents of the University of California*,
    591 U.S. 1 (2020) ........................................................................................................... 10

*E. Bridge, LLC v. Chao*,
    320 F.3d 84 (1st Cir. 2003) ............................................................................................. 8

*Elgin v. Department of Treasury*,
    567 U.S. 1 (2012) ......................................................................................................... 7, 12

*Elgin v. U.S. Dep't of Treasury*,
    641 F.3d 6 (1st Cir. 2011), *aff'd*, 567 U.S. 1 (2012) ....................................................... 8

*Feds for Med. Freedom v. Biden*,
    63 F.4th 366 (5th Cir.) (en banc), *cert. granted, judgment vacated on other
    grounds*, 144 S. Ct. 480 (2023) ......................................................................... 5, 8, 10, 11

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ........................................................................................................ 10

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
  561 U.S. 477 (2010) ................................................................................................ 7, 12, 13

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) .................................................................................................................. 6

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................................................................................ 10

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) .................................................................................................................. 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .................................................................................................................. 14

*NAACP v. Sec'y of Housing & Urban Dev.*,
  817 F.2d 149 (1st Cir. 1987) ................................................................................................... 10

*NTEU v. Helfer*,
  53 F.3d 1289 (D.C. Cir. 1995) ................................................................................................ 11

*NTEU v. Newman*,
  768 F. Supp. 8 (D.D.C. 1991) ................................................................................................. 11

*NTEU v. Von Raab*,
  489 U.S. 656 (1989) ................................................................................................................ 11

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) .......................................................................................................... *passim*

*Union of Concerned Scientists v. Wheeler*,
  954 F.3d 11 (1st Cir. 2020) ..................................................................................................... 10

*United States v. Fausto*,
  484 U.S. 439, 453 (1988) ........................................................................................................ 12

*United States v. NTEU*,
  513 U.S. 454 (1995) ................................................................................................................ 11

*Weyerhaeuser Co.* v. *United States Fish and Wildlife Serv.*,
  586 U.S. 9 (2018) .................................................................................................................... 10

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) .................................................................................................................. 6

**Statutes**

5 U.S.C. § 701 ............................................................................................................................6

5 U.S.C. § 1103 ...................................................................................................................10, 12

5 U.S.C. § 1105 ........................................................................................................................12

5 U.S.C. § 7134 ........................................................................................................................12

42 U.S.C § 1331 .......................................................................................................3, 5, 6, 8, 14

**INTEREST AND IDENTITY OF AMICI CURIAE**

Amicus State Democracy Defenders Fund ("SDDF") is a bipartisan, nonprofit organization committed to upholding the rule of law, fighting against autocracy, and defending the Constitution.  Donald B. Ayer, Ty Cobb, Barbara Comstock, Mickey Edwards, John Farmer Jr., Stuart M. Gerson, Peter Keisler, William Kristol, Philip Allen Lacovara, John McKay, Trevor Potter, Alan Charles Raul, Stephen Richer, Paul Rosenzweig, Claudine Schneider, Peter M. Shane, Robert Shanks, Christopher Shays, Olivia Troye, Joe Walsh, William F. Weld, and Christine Todd Whitman (collectively with SDDF, "*Amici*") are former elected officials, other government officials, and legal scholars who have collectively spent decades in public service defending the Constitution, the interests of the American people, and the rule of law.

*Amici* have a strong interest in this case, based on their commitment to ensuring access to justice through the courts for federal public servants, preserving the proper scope of executive power, and the faithful and equal enforcement of the federal laws.  As former government officials, including in the federal service, *amici* have personally witnessed the need for an experienced, apolitical federal workforce capable of carrying out the critical operations of our federal agencies and maintaining continuity of service for Americans.  The unique perspective of *amici*, informed by their public service and scholarship, make them well qualified to present arguments and perspectives to this Court that the parties alone are not likely to present.

*Amici* and their relevant background are listed below:

- **Donald B. Ayer**, Deputy Attorney General in the George H.W. Bush Administration from 1989 to 1990.

- **Ty Cobb**, Special Counsel to the President in the Trump Administration from 2017 to 2018.

- **Barbara Comstock**, Representative of the 10th District of Virginia from 2015 to 2019 (R).

1

- **Mickey Edwards**, Representative of the 5th District of Oklahoma from 1977 to 1993 (R).

- **John Farmer Jr.**, New Jersey Attorney General from 1999 to 2002 (R); University Professor, Rutgers University, former Dean Rutgers Law School (2009-2013).

- **Stuart M. Gerson**, Assistant Attorney General for the Civil Division in the George H.W. Bush Administration from 1989 to 1993 and Acting United States Attorney General in the Clinton Administration in 1993.

- **Peter Keisler**, Acting Attorney General in the George W. Bush Administration in 2007; Assistant Attorney General for the Civil Division from 2003 to 2007; Principal Deputy Associate Attorney General and Acting Associate Attorney General from 2002 to 2003; Assistant and Associate Counsel to President Ronald Reagan from 1986 to 1988.

- **William Kristol**, Chief of Staff to Vice President Dan Quayle from 1989 to 1993; Board Member of State Democracy Defenders Fund.

- **Philip Allen Lacovara**, Deputy Solicitor General in the Richard M. Nixon Administration from 1972 to 1973 and Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office from 1973 to 1974.

- **John McKay**, U.S. Attorney for the Western District of Washington in the George W. Bush Administration from 2001 to 2007.

- **Trevor Potter**, Chairman of the Federal Election Commission in 1994 and Commissioner of the Federal Election Commission from 1991 to 1995.

- **Alan Charles Raul**, General Counsel of the Office of Management and Budget from 1988 to 1989 and Associate Counsel to President Ronald Reagan from 1986 to 1988.

- **Stephen Richer**, Recorder Maricopa County, AZ from 2021 to 2025 (R); Board Member of State Democracy Defenders Fund.

- **Paul Rosenzweig**, Deputy Assistant Secretary for Policy of the Department of Homeland Security in the George W. Bush Administration from 2005 to 2009.

- **Claudine Schneider**, Representative of Rhode Island from 1981 to 1991 (R).

- **Peter M. Shane**, Jacob E. Davis and Jacob E. Davis II Chair in Law Emeritus at The Ohio State University's Moritz College of Law and Attorney-Adviser in the Office of Legal Counsel from 1979 to 1981.

- **Robert Shanks**, Deputy Assistant Attorney General for the Office of Legal Counsel in the Reagan Administration from 1981 to 1984.

- **Christopher Shays**, Representative of the 4th District of Connecticut from 1987 to 2009 (R).

- **Olivia Troye**, Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence from 2018 to 2020.

- **Joe Walsh**, Representative of the 8th Congressional District of Illinois from 2011 to 2013 (R); Board Member of State Democracy Defenders Fund.

- **William F. Weld**, Governor of Massachusetts from 1991 to 1997 (R).

- **Christine Todd Whitman**, Governor of New Jersey from 1994 to 2001 (R) and Administrator of the Environmental Protection Agency from 2001 to 2003.

## INTRODUCTION AND SUMMARY

*Amici* write to respond to the argument advanced by Defendants the Office of Personnel Management and its new Acting Director (collectively, "OPM") that this Court lacks jurisdiction to review a challenge to OPM's recent actions targeting over two million federal employees who provide vital governmental services across the nation. OPM cloaks itself in a doctrine derived from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–13 (1994), that was designed to adhere to Congressional intent that certain statutory claims be channeled, in the first instance, to an agency adjudicative scheme prior to judicial review. That doctrine has no application at all to Plaintiffs' Administrative Procedure Act ("APA") claims challenging to the legality of OPM's actions across the entire federal government as arbitrary, capricious, and contrary to any authorizing statute, because Congress *never* intended, either explicitly or implicitly, for such claims to be adjudicated by any administrative agency.

OPM acknowledges, as it must, that Congress has not *expressly* divested this Court of Article III jurisdiction, which plainly exists under 42 U.S.C §1331 for claims pursuant to the APA, over Plaintiffs' claims. OPM instead invokes an *implied* doctrine of statutory construction

3

to argue that Congress intended, without ever saying so, to strip this Court of jurisdiction by way of two other statutes: the Civil Service Reform Act ("CSRA") and Federal Service Labor-Management Relations Statute ("FSL-MRS").

Where, as here, the government relies on an *implied* statutory doctrine to evade judicial review of the legality of its actions, and in particular to override the APA's *express* statutory authorization to review the federal government's actions (5 U.S.C. §§701-706), courts should proceed with utmost caution. The Supreme Court has taken great care in recent years not to expand the scope of this doctrine. But OPM asks this Court to expand the reach of *Thunder Basin* beyond the applicable Supreme Court precedent simply because the claims are *related* to the subject matter (federal employment) of particular statutes. In so doing, it has profoundly overreached. The myriad problems and dangers of using an implied, judge-made *Thunder Basin* doctrine to trump express statutory language are thoroughly explained in Justice Gorsuch's recent concurrence in *Axon Enterprises, Inc. v. Federal Trade Commission,* 598 U.S. 175, 217 (2023). We write to urge the Court to heed that warning, exercise caution, and to decline OPM's invitation to expand *Thunder Basin* far beyond its moorings or existing Supreme Court precedent. *Id*. at 217 (Gorsuch, J., concurring) ("Respectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon.").

Next, OPM's claim that Congress has impliedly removed this Court's Article III jurisdiction over APA claims simply because they touch on federal employment is incorrect. OPM Opp. at 12 (contending that "Congress has divested the federal district courts of jurisdiction over federal employment matters like this one"). OPM strays far from congressional intent and the statutory text of the APA itself and ignores the actual nature of the challenge brought here, which is well removed from the personnel actions subject to CSRA adjudication,

4

or the labor procedures and disputes heard by the Federal Labor Relations Authority. OPM gives far too little respect to the role that Congress intended the APA to play in cabining unlawful government action by way of judicial review.

The APA, in the words of the Supreme Court, expressly "*command[s]*" judicial review of government action, with quite narrow exceptions. *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019). OPM admits, again as it must, that Plaintiffs' claims do not fall within any express exception to federal jurisdiction (including any APA exception). Under the language of the APA and §1331, there can be no doubt at all that this Court has jurisdiction over claims brought pursuant to the "judicial review" provisions of the APA. Thus, OPM must rely on the argument that two *other* statutes silently and impliedly eliminated Congress' express command in the APA to review unlawful action. OPM Opp. at 12-19. But neither the CSRA nor the FSL-MRS divests this Court of jurisdiction over Plaintiffs' APA claims, by implication or otherwise, because Plaintiffs' claims here do not arise under those statutes. *See. e.g.*, *Feds for Med. Freedom v. Biden,* 63 F.4th 366, 375 (5th Cir.) (en banc), *cert. granted, judgment vac'd on other grounds*, 144 S. Ct. 480 (2023) (en banc reversal of panel's *Thunder Basin* jurisdictional holding: "We hold plaintiffs are not challenging CSRA-covered personnel actions. Plaintiffs are challenging (under the Constitution, the APA, and [other statutes]) the President's executive orders requiring federal employees to make irreversible medical decisions to take COVID-19 vaccines"). And further, the later-enacted statutes governing federal civil service and federal labor relations invoked by the OPM actually *incorporate* APA review, rather than eviscerating it. Neither the Supreme Court nor the First Circuit has ever endorsed the sweeping interpretation of the controversial *Thunder Basin* doctrine advanced by OPM here, and this Court should firmly decline to do so as well.

This case comes at a critical moment in our nation's history, when a new Presidential administration seeks to expand its powers in relation to Congress at the same time that it invites the federal courts to remove long-standing checks and balances under the law. As the Honorable John C. Coughenour of the Western District of Washington stated from the bench just this past week when enjoining a different administration action: "[I]n this courtroom, and under my watch, the rule of law is a bright beacon which I intend to follow." *Amici* urge this Court to hold that Congress has not implicitly deprived the Court of its authority to adjudicate Plaintiffs' APA claims challenging OPM's actions as unlawful, arbitrary, and capricious, and to exercise its most fundamental role under Article III to provide judicial review of executive action as Congress and the Constitution intended.

## ARGUMENT

I. **The Implied *Thunder Basin* Jurisdictional Channeling Doctrine Must be Implemented Cautiously and Only as Necessary to Effectuate Congressional Intent, Rather Than as a Tool to Insulate Unlawful Agency Action from Review**

In the face of express statutory authorization of Plaintiffs' claims (28 U.S.C. §1331; 5 U.S.C. §§701-706), OPM relies solely on the doctrine of implied administrative "channeling" that is outlined in *Thunder Basin* to argue this Court lacks jurisdiction. But the Supreme Court has significantly "cabin[ed]" such implied doctrines in recent years. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 37 (1st Cir. 2007).

Although federal courts once readily departed from the text enacted by Congress—fashioning "implie[d]" doctrines as they deemed "necessary to make effective the congressional purpose" expressed in that text, *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)—today, that approach is recognized as an "ancien regime." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). Today, what the judiciary may

6

perceive as to Congress's intentions and expectations "matters only to the extent it clarifies text." *Sandoval*, 532 U.S. at 288.

*Thunder Basin*'s doctrine of implied administrative channeling must be considered against this backdrop. In *Thunder Basin* itself as well as subsequent decisions including *Elgin v. Department of Treasury*, 567 U.S. 1, 22 (2012), *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477, 489 (2010)), and most recently, *Axon*, 598 U.S. at 185, the Supreme Court has approached this doctrine with increasing caution. The Court has closely scrutinized whether the "claims" at issue are "of the type Congress intended to be reviewed within th[e] statutory structure." *Thunder Basin*, 510 U.S. at 212.

As Justice Kagan, writing for the Court in *Axon*, explained, "a statutory review scheme … does not necessarily extend to every claim concerning agency action." *Axon*, 598 U.S. at 185. Justice Gorsuch, in the same case, went further, criticizing courts' employment of an implied doctrine to re-write express statutory grants of jurisdiction to Article III courts as contrary to law and ripe for abandonment. *Id*. at 205 (Gorsuch, J., concurring) ("There are many problems with the *Thunder Basin* project, but start with its sheer incoherence."); *id*. at 207 (Gorsuch, J., concurring) ("But what gives courts authority to engage in this business of jurisdiction-stripping-by-implication?"). Justice Gorsuch invited a return to first principles that should give any court great pause before expanding this doctrine:

> Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (Marshall, C. J., for the Court)…
>
> *Thunder Basin* defies these foundational rules. Maybe worse, it exhibits familiarity with none of them…
>
> Divesting jurisdiction by mere implication goes from out-of-bounds to the name of the game. Along the way, this Court arrogates to itself a power to control the jurisdiction of lower federal courts that the Constitution reserves to Congress….

> We have no authority to froth plain statutory text with factors of our own design, all with an eye to denying some people the day in court the law promises them.

*Id.* at 207, 217 (Gorsuch, J., concurring). While the Court did not accept Justice Gorsuch's invitation to abandon this doctrine entirely, his reasoning, supported by long-standing "foundational" doctrine, encourages this Court to use *Thunder Basin* sparingly and with great caution.

The First Circuit has not addressed the scope of *Thunder Basin* beyond cases involving claims that are directly cognizable under a specific statutorily created administrative regime. Per express Congressional direction, those cases must proceed through that regime before being heard in federal court. *E.g.*, *Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 12 (1st Cir. 2011), *aff'd*, 567 U.S. 1, (2012) (Congress intended employees' challenge to discharge to be heard in first instance by the Merit Systems Protection Board ("MSPB")); *E. Bridge, LLC v. Chao*, 320 F.3d 84, 91 (1st Cir. 2003). Nor has the First Circuit weighed in recently, during the time period when the Supreme Court viewed implied doctrines like *Thunder Basin* with increasing skepticism.

Other courts, in more recent cases, have refused to expand this jurisdiction-stripping doctrine. Recently, in *Feds for Medical Freedom,* the en banc Fifth Circuit reversed a panel decision holding that federal courts lacked jurisdiction over an APA challenge to the legality of former President Biden's Executive Order mandating Covid vaccination for federal employees, which that administration argued was administratively channeled by the CSRA. Echoing Justice Gorsuch's framing, the court described the issue as "[i]mplicit jurisdiction-stripping," which "turns on whether it's 'fairly discernible' from the statutory scheme that Congress silently took away the jurisdiction that § 1331 explicitly conferred." *Feds for Med. Freedom*, 63 F.4th at

8

370.¹  The court narrowly construed this implied doctrine, and did not conclude, as OPM urges here, that the APA claims challenging the legality of that Covid vaccine program were channeled simply because they relate to federal employment.

The Supreme Court's turn towards textualism cautions against divorcing the *Thunder Basin* factors from the congressional intent they are supposed to help illuminate.  Indeed, the Supreme Court has repeatedly emphasized that, "Congress knows how" to make its intentions clear "when it can muster the will."  *McGirt v. Oklahoma*, 591 U.S. 894, 904 (2020); *cf. Biden v. Texas*, 597 U.S. 785, 798 (2022) ("If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote.").

**II.    Congress Intended the Administrative Procedure Act to Command Judicial Review of OPM's Arbitrary, Capricious, and Unlawful Program Targeting All Federal Employees Across Agencies**

OPM's claim that Congress has implicitly "divested" the federal courts of jurisdiction over all matters related to federal employment gives no weight to the express grant of judicial review in the statute under which the Plaintiffs have sued: the APA.

As previously explained, the *Thunder Basin* doctrine operates as an approach to statutory interpretation that begins by asking whether the claims at issue are of the type that *Congress* intended to send for administrative adjudication prior to judicial review by an Article III court. 510 U.S. at 212.  The Plaintiffs sued here under the APA.  Through the APA, Congress established what the Supreme Court recently described as the "command" of judicial review. *New York*, 588 U.S. at 772.  It is integral to this statutory mandate that the APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to

---

¹ The employee mandate injunction and judgment issued by the District Court were subsequently vacated as moot by the Supreme Court.  144 S. Ct. 480.

9

review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (the APA embodies a "basic presumption of judicial review). And Congress expressly set forth the only narrow exceptions to this mandate: "Congress created two exceptions to judicial review: where a statute expressly precludes it, [5 U.S.C.] § 701(a)(1), or the agency action is "committed to agency discretion by law," § 701(a)(2)." *New York*, 588 U.S. at 772; *see Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 17-18 (2020) ("[t]o 'honor the presumption of review, we have read the exception in § 701(a)(2) *quite narrowly*,' *Weyerhaeuser Co.* v. *United States Fish and Wildlife Serv.*, 586 U.S. 9, 23 (2018), confining it to those rare 'administrative decision[s] traditionally left to agency discretion,' *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)"); *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020) ("There is a 'strong presumption' of judicial review under the APA."); *NAACP v. Sec'y of Housing & Urban Dev.*, 817 F.2d 149, 152 (1st Cir. 1987) ("[F]ederal action is nearly always reviewable for conformity with statutory obligations....").[2]

Against this express "command" of judicial review of OPM's actions under the APA, Defendants offer only implication. But in evaluating whether the CSRA or FSL-MRS implicitly overrules the APA, the Court cannot overlook the provisions of those statutes that directly address and incorporate the APA review. The APA (1946) pre-dated both the CSRA (1978) and FSL-MRS (1978). Far from intending to silently eradicate judicial review under the APA, Congress acknowledged the importance and applicability of the APA in those very statutes. *See*

---

[2] OPM's argument that the Court lacks jurisdiction over APA claims here that neither arise from nor rely on the CSRA or FSL-MRS is even more "implausible" than the contention that any claims "arising from a deportation proceeding" were subject to a "general jurisdictional limitation" in the immigration statutes at issue in *Department of Homeland Security*, 591 U.S. 1.

10

5 U.S.C. §1103 (CSRA: requiring the Director of OPM to comply with APA notice and comment rule-making), §1105 (CSRA: "in the exercise of the functions assigned under this chapter, the Director shall be subject to APA); §7134 (APA applies to any rules pursuant to FSL-MRS).

Consistent with this command of judicial review of agency action set forth in the APA, OPM, which acts as the human resources agency for all federal agencies that directly employ workers, has long been understood to be accountable for its actions impacting federal employment under the APA. *E.g.*, *NTEU v. Helfer*, 53 F.3d 1289, 1292–93 (D.C. Cir. 1995); *NTEU v. Newman*, 768 F. Supp. 8, 12 (D.D.C. 1991) (enjoining OPM program for federal government hiring: "[t]he failure to comply with the APA's mandate of rulemaking via notice to the public, and the failure to invite, receive, and respond to comments from the public, is patent. Accordingly, the rule must be invalidated."). And, as the Fifth Circuit explained in *Feds for Med. Freedom v. Biden*: "[a] long line of cases establishes that federal employees can bring facial, pre-enforcement actions against federal policies …" 63 F.4th at 378.[3] The notion that the CSRA and FSL-MRS channel *all* matters touching on federal employment, as OPM now claims, defies this well-established history, as well as the express language of all of these statutes.

Further, no Supreme Court or First Circuit authority requires this Court to expand *Thunder Basin* to preclude Plaintiffs' APA claims, which challenge the "Fork Directive" (OPM's program for reduction in force/mass resignation, offered to over two million federal employees,

---

[3] That court correctly pointed out examples of the Supreme Court's consideration of challenges by federal employees to government policies and programs as unlawful that were not channeled because they related to federal employment. *Id.* at 378-79 (citing *NTEU v. Von Raab*, 489 U.S. 656 (1989) (pre-enforcement challenge to drug-testing program for federal employees); *United States v. NTEU*, 513 U.S. 454 (1995) (pre-enforcement challenge to a law prohibiting federal employees from accepting honoraria).

11

as described in Plaintiffs' Complaint and Motion) as arbitrary and capricious in violation of the APA and as contrary to the Antideficiency Act. Plaintiffs' claims are *not* based on the statutes OPM invokes to justify channeling. Indeed, no Supreme Court decision has applied *Thunder Basin* doctrine to channel claims that arise only under the APA, with its express mandate to the federal courts, based on a different statute that the defendant claims creates an administrative adjudicatory scheme. *See*, *e.g.*, *Axon*, 598 U.S. at 185 (no APA claim; rejects channeling under Securities Exchange Act); *Elgin* 567 U.S. at 22 (no APA claim; holds that employees must bring constitutional challenges to adverse employment decisions subject to CSRA before administrative agency); *Free Enterprise Fund*, 561 U.S. at 489 (no APA claim; rejects channeling under the Securities Exchange Act); *United States v. Fausto*, 484 U.S. 439, 453 (1988) (no APA claim; reconciles CSRA with Back Pay Act to conclude that Congress did not intend probationary employee separate avenue for challenging personnel action); *Thunder Basin* (no APA claim; holds Mine Act disputes must be brought before agency empowered to resolve constitutional due process challenges along with statutory claims).

OPM relies heavily on the D.C. Circuit's decision in *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019), which required administrative channeling of challenges to three Executive Orders addressing labor-management relations. But the plaintiffs in *AFGE v. Trump* did not assert an APA claim. *Id.* at 753-54. Thus, the D.C. Circuit never grappled with either the "command" of judicial review in the APA, or with Congress' many references to the APA throughout the CSRA and FSL-MRS (5 U.S.C. §§1103, 1105, 7134).

Further, to the extent that D.C. Circuit caselaw is construed as expanding the implied *Thunder Basin* doctrine to foreclose all claims related to labor-management issues from judicial review, regardless of whether any administrative agency could ever hear those claims, this Court

12

need not and should not follow that lead. Congress created the right of action and the remedy under the APA and required this Court to exercise that jurisdiction, and that directive should not be erased by implication. It defies credulity to conclude that the Congress that enacted the CSRA, well-aware of the long-standing rule of judicial review under the APA, would have *silently* foreclosed judicial review of government-wide action purporting to affect every federal employee across all agencies, when that action cannot be challenged or remedied in the limited statutory administrative proceedings to which OPM urges Plaintiffs' claims should be channeled. This case is more akin to *Axon*, 598 U.S. at 185, and *Free Enterprise Fund*, 561 U.S. at 489, in which the Supreme Court affirmed federal court jurisdiction because the plaintiffs could not obtain meaningful relief for their claims in an administrative process designed only to review certain agency actions. The same is true here.

Two final notes regarding issues this Court need not reach:

First, this case does not raise the question of whether an individual federal employee's statutory CSRA claims or a union's FSL-MRS claims "repackaged" as an entirely duplicative APA challenge should be first heard by an administrative agency. *Amici* recognize that concerns regarding Congressional intent are far stronger when asserted APA claims entirely duplicate statutory claims that no one would dispute Congress directed to be heard by administrative agencies.[4]

Second, this case also does not foreclose a new Presidential administration from implementing policy objectives in a lawful manner. As the late Justice Rehnquist wrote, "*As long as [an] agency remains within the bounds established by Congress*, it is entitled to assess

---

[4] As explained in Plaintiffs' reply brief, Plaintiffs are not employees and they do not challenge covered personnel actions or allege unfair labor practices covered by the CSRA or FSL-MRS. Plaintiffs' Reply at 11, 14.

13

administrative records and evaluate priorities in light of the philosophy of the administration." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part) (emphasis added). Here, whatever one thinks of the policy objectives of those now directing the actions of OPM, this Court has a mandate to decide whether OPM's actions remain within the bounds established by Congress.

The arguments presented here on behalf of OPM, if accepted, would place this administration above and beyond the law, by depriving the separate and equal judicial branch of government of its constitutional role and its statutory responsibility to review the legality of OPM's actions. Congress has affirmatively answered the question whether this Court has jurisdiction, by way of §1331 and the APA itself, and it is clear it never intended the CSRA or FSL-MRS to divest the courts of that jurisdiction. This Court should effectuate its vital role in the balance of power, by checking the ability of this administration to engage in unlawful acts affecting over two million federal employees. If indeed this Fork Directive is contrary to law (as Plaintiffs have argued), it is well within this Court's Article III power to require OPM's unlawful action to cease.

*Amici* are well-aware of the critical services that federal employees provide to the American people, and respectfully request that this Court halt OPM's unlawful, arbitrary, and capricious program and prevent the chaos that it was plainly intended to create. At the very least, OPM's attempt to convince this Court that it lacks the jurisdiction to review this program, and the corresponding jurisdiction to maintain the status quo while it carefully considers the program's illegality, must be rejected.

Respectfully submitted,

Dated: February 9, 2025

By: /s/ *Michael R. Keefe*

Danielle Leonard * (CA Bar No. 218201)
Zoe Palitz* (CA Bar No. 275752)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
dleonard@altber.com
zpalitz@altber.com

Hon. Nancy Gertner (Ret.) (BBO # 190140)
William W. Fick (BBO # 650562)
**FICK & MARX LLP**
24 Federal Street, 4th Floor
Boston, MA 02110
Phone: (857) 321-8360
ngertner@fickmarx.com
wfick@fickmarx.com

Paul F. Kelly (BBO # 267000)
Michael R. Keefe (BBO # 690257)
**SEGAL ROITMAN, LLP**
33 Harrison Avenue, 7th Floor
Boston, MA 02111
Phone: (617) 742-0208 ext. 228
Direct: (617) 603-1412
Fax: (617) 742-2187
pkelly@segalroitman.com
mkeefe@segalroitman.com

Norman L. Eisen, (D.C. Bar # 435051)
Tianna J. Mays (D.C. Bar # 90005882)
**STATE DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org

*Counsel for Amici Curiae Former Public Officials and Legal Scholars*

*pro hac vice pending

15