# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>CHARLES EZELL, ACTING DIRECTOR, OFFICE OF PERSONNEL MANAGEMENT, *et al.*<br><br>*Defendants*. | Civil Action No. 1:25-cv-10276 |

**PROPOSED BRIEF OF THE STATES OF MONTANA AND TWENTY-ONE STATES AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

1

## INTEREST OF *AMICI CURIAE*

The federal government employs more than two million workers. *See Federal Workforce Data*, U.S. Office of Personnel Management ("OPM").[1] As head of the executive branch, President Trump is vested with the constitutional authority to supervise and manage the federal workforce. *See* U.S. CONST. art. II, § 1, cl. 1. Pursuant to this authority, President Trump already has issued numerous directives to federal employees relating to their employment. *See, e.g.*, Executive Order 14171 of Jan. 20, 2025, *Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce*, 90 Fed. Reg. 8625 (Jan. 31, 2025); Executive Order 14170 of Jan. 20, 2025, *Reforming the Federal Hiring Process and Restoring Merit to Government Service*, 90 Fed. Reg. 8621 (Jan. 30, 2025); Memorandum of Jan. 20, 2025, *Restoring Accountability for Career Senior Executives*, 90 Fed. Reg. 8481 (Jan. 30, 2025); Memorandum of Jan. 20, 2025, *Return to In-Person Work*, 90 Fed. Reg. 8251 (Jan. 28, 2025); Memorandum of Jan. 20, 2025, *Hiring Freeze*, 90 Fed. Reg. 8247 (Jan. 28, 2025). OPM's "Fork Directive" is carrying out President Trump's orders for the federal workforce and is supported by the public interest.

*Amici curiae* are the States of Montana, Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, and West Virginia, which submit this brief in support of Defendants ("Amici States"). Thousands of federal workers are employed in every Amici State. *Current Federal*

---

[1] https://www.fedscope.opm.gov/.

*Civilian Employment by State and Congressional District*, Congressional Research Service (Dec. 20, 2025), 2-3.[2] Montana, for example, is home to more than 10,000 federal employees. *Id.* at 2. Presumably, federal employees in the Amici States already have accepted the Fork Directive's voluntary deferred resignation offer. Amici States also interact frequently with federal workers regarding constituent services and concerns. Finally, Amici States manage their own workforces, and intrusions into the President's ability to manage the federal workforce could be wielded against Amici States attempting to responsibly manage their workforces. Accordingly, the Amici States have an interest in how the federal workforce is managed.

## ARGUMENT
### I. The President Has the Authority to Manage the Federal Workforce.

Plaintiffs are federal employee unions that are displeased with employment management actions taken by President Trump since he took office on January 20, 2025. Although they do not directly challenge them in this lawsuit, Plaintiffs complain about executive orders that President Trump signed on his first day in office. *See* Compl., ¶ 4. Plaintiffs also allege that "[d]aily, the President is also eliminating offices and programs that are supported by Congressional appropriations and tasked by Congress with specific functions." *Id.*

"In line with these efforts" by President Trump, according to Plaintiffs, came the Fork Directive. *Id.* at ¶ 5. Plaintiffs have challenged the Fork Directive through

---

[2] https://crsreports.congress.gov/product/pdf/R/R47716

3

two counts under the Administrative Procedure Act. *See* Compl, pp. 32-34. Plaintiffs first claim that the Fork Directive is arbitrary and capricious under the APA for various unsupported and speculative reasons. *Id.* at Count One. Second, Plaintiffs claim that the Fork Directive is not in accordance with the law and exceeds statutory authority based on current appropriations. *Id.* at Count Two.

Plaintiffs do not challenge the authority to issue the Fork Directive or its constitutionality. Such a challenge would inevitably fail. Article II provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. CONST. art. II, § 1, cl. 1. "This grant of authority establishes the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity." *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982). These responsibilities include "management of the Executive Branch—a task for which 'imperative reasons requir[e] an unrestricted power [in the President] to remove the most important of his subordinates in their most important duties.'" *Id.* (quoting *Myers v. United States*, 272 U.S. 52, 134-35 (1926)).

The President has enjoyed supervisory power over the federal workforce since the Founding. "The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress, and was confirmed in the landmark decision *Myers v. United States*, . . ." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citation omitted). James Madison confirmed the President's supervisory power in

1789. "As Madison stated on the floor of the First Congress, 'if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)). "Time and again" the Supreme Court has "recognized that the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 148 (2011) (citations omitted).

The power to supervise and manage the federal workforce is a critical power and responsibility entrusted to the President. "The President 'occupies a unique position in the constitutional scheme,' as 'the only person who alone composes a branch of government.'" *Trump v. United States*, 603 U.S. 593, 610 (2024) (citations omitted). Indeed, "[t]he President's duties are of 'unrivaled gravity and breadth.'" *Id.* at 607 (quoting *Trump v. Vance*, 591 U.S. 786, 800 (2020)). The Founders believed that a "vigorous" and "energetic" Executive was needed "to ensure 'good government,' for a 'feeble executive implies a feeble execution of the government.'" *Id.* at 610 (quoting The Federalist No. 70, pp. 471-72 (J. Cooke ed. 1961) (A. Hamilton)).

By issuing the Fork Directive, OPM is carrying out President Trump's directives for the federal workforce. Plaintiffs acknowledge as much by complaining about President Trump's executive orders and alleging that the Fork Directive was "in line with these efforts." Compl., ¶¶ 4-5. Plaintiffs' true complaint, then, is with how President Trump is exercising his constitutional authority to manage the federal

5

workforce. But just as the President has the authority to supervise and remove federal employees, his administration has the ability to offer federal employees voluntary deferred retirement.

Courts should refrain from intruding into the President's well-settled Article II authority to supervise and manage the federal workforce. As the Supreme Court observed almost a century ago, it is "a general rule inherent in the American constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the Legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; the judiciary cannot exercise either executive or legislative power." *Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 201–02 (1928). The Founders "viewed the principle of separation of powers as the absolutely central guarantee of a just Government." *Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J., dissenting).

Plaintiffs seek to inject this Court into federal workforce decisions made by the President and his team. The Court can avoid raising any separation of powers concerns by denying Plaintiffs' relief and allowing the President and his team to manage the federal workforce. Accordingly, the Court should deny Plaintiffs' motion for a temporary restraining order.

## II. The Public Interest Supports the Fork Directive.

The Fork Directive reports that President Trump is reforming the federal workforce around four pillars. These pillars of (1) return to office, (2) performance culture, (3) more streamlined and flexible workforce, and (4) enhanced standards of

6

conduct will improve services that the federal workforce provides to Americans. The Fork Directive supports these four pillars by freeing up government resources and revenue to focus on better serving the American people.

The overwhelming response to the Fork Directive by the federal workforce demonstrates its support among federal workers themselves. By the time of the original deadline, more than 65,000 federal workers had accepted the Fork Directive's voluntary deferred resignation offer. Sara Dorn, *Deadline For Trump's Federal Buyout Offer Extended By Court—As Over 65,000 Staff Agree To Leave: Here's What To Know*, FORBES (Feb. 7, 2025).[3] This number likely will increase based on the additional acceptance time ordered by the Court. Federal workers' interest in the Fork Directive's voluntary deferred resignation offer weighs against the relief sought by Plaintiffs.

The Fork Directive also is consistent with the desires of the general public. According to recent public opinion surveys, Americans' confidence in the federal government has reached depths not seen since the Vietnam War. Claudia Deane, *American's Deepening Mistrust of Institutions*, PEW (Oct. 17, 2024).[4] A majority of Americans believe the federal government is too large, inefficient, and wasteful. Frank Newport, *Public Support for Making U.S. Government More Efficient*, GALLUP

---

[3] https://www.forbes.com/sites/saradorn/2025/02/07/deadline-for-trumps-federal-buyout-offer-extended-by-court-as-over-65000-staff-agree-to-leave-heres-what-to-know/.
[4] https://www.pewtrusts.org/en/trend/archive/fall-2024/americans-deepening-mistrust-of-institutions.

(Nov. 22, 2024).[5]  The Fork Directive will help make the government more efficient and more responsible with Americans' hard-earned tax dollars.

The American people elected a president who repeatedly made clear his desire for a more efficient, smaller government.  The Fork Directive is consistent with those desires.  Thus, when weighing the equitable factors, the public interest weighs strongly against Plaintiffs' requested relief.

### III. Plaintiffs' requested relief is contradictory

Plaintiffs initially requested that this Court "enter a Temporary Restraining Order directing Defendants to pause the February 6th deadline for acceptance of the Directive while Plaintiffs seek further relief ensuring that OPM completes the required consideration of the Directive's legal basis, justification, and funding before further proceeding."  ECF 12 at 26.[6]  The request to stay the February 6, 2025, deadline rather than halt the program is in direct conflict with Plaintiffs' claims that (1) the Fork Directive is unlawful under the Administrative Procedure Act and Antideficiency Act and (2) they will suffer irreparable harm.

If the Fork Directive is unlawful (it's not), then why are they asking—even in the alternative—for it to be implemented under more relaxed timelines?  That makes no sense.  Likewise, Plaintiffs claim they will be irreparably harmed absent a stay

---

[5] https://news.gallup.com/opinion/polling-matters/653657/public-support-making-government-efficient.aspx.
[6] Plaintiffs also allege they are harmed due to expending resources as a result of the Fork Directive. ECF 12 at 8.  On February 7, 2025, the U.S. District Court for the District of Columbia found that a collection of labor unions lacked organizational or associational standing to obtain preliminary relief against the Department of Labor and the United States DOGE Service Temporary Organization.  *See* ECF 18, *AFL-CIO v. U.S. Dep't of Labor*, No. 1:25-cv-00339-JDB (D.D.C. Feb. 7, 2025).  The *AFL-CIO* plaintiffs also relied on the diversion of resources theory of organizational standing.

8

due to a "significant loss of members." ECF 12 at 24. A stay of the deadline, however, won't stop all (or even most) federal employees from accepting the offer. Extending the deadline will actually increase the harm to Plaintiffs by allowing additional employees to participate. Some employees may defer acceptance if given additional time, but Plaintiffs will still suffer lost membership and revenue as long as the offer is open.

Plaintiffs have implicitly acknowledged this critical flaw in their case by changing their requested relief at the eleventh hour. Plaintiffs filed an Amended Proposed Temporary Restraining Order on February 7, 2025, with their Reply. The amended request would have the Court enjoin Defendants "from further soliciting resignations under the program, pending submission and resolution of Plaintiffs' upcoming motion for preliminary injunction." ECF 50-1 at 2. These inconsistencies militate against granting any relief to Plaintiffs. The Court also shouldn't permit Plaintiffs to shift their legal theories at the end of briefing.

## CONCLUSION

For these reasons, the Amici States respectfully request that the Court deny Plaintiffs' motion for a temporary restraining order.

DATED this 9th day of February, 2025.

Respectfully Submitted,

/s/ *Patrick Strawbridge*
Patrick Strawbridge BBO #678274
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
617.227.0548
patrick@consovoymccarthy.com

*Counsel for Amicus Curiae State of Montana*


AUSTIN KNUDSEN
  *Montana Attorney General*

CHRISTIAN B. CORRIGAN*
  *Solicitor General*

Peter M. Torstensen, Jr.
  *Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders
Helena, Montana 59620-1401
(406) 444-2707
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Counsel for Amicus Curiae State of Montana*

*Pro hac vice forthcoming

10

**ADDITIONAL COUNSEL**

| | |
|---|---|
| STEVE MARSHALL<br>*Attorney General of Alabama* | TIM GRIFFIN<br>*Attorney General of Arkansas* |
| JOHN GUARD<br>*Acting Attorney General of Florida* | CHRIS CARR<br>*Attorney General of Georgia* |
| RAÚL R. LABRADOR<br>*Attorney General of Idaho* | THEODORE E. ROKITA<br>*Attorney General of Indiana* |
| BRENNA BIRD<br>*Attorney General of Iowa* | KRIS KOBACH<br>*Attorney General of Kansas* |
| RUSSELL COLEMAN<br>*Attorney General of Kentucky* | LIZ MURRILL<br>*Attorney General of Louisiana* |
| LYNN FITCH<br>*Attorney General of Mississippi* | ANDREW BAILEY<br>*Attorney General of Missouri* |
| MICHAEL T. HILGERS<br>*Attorney General of Nebraska* | DREW WRIGLEY<br>*Attorney General of North Dakota* |
| GENTNER F. DRUMMOND<br>*Attorney General of Oklahoma* | ALAN WILSON<br>*Attorney General of South Carolina* |
| MARTY J. JACKLEY<br>*Attorney General of South Dakota* | JONATHAN SKRMETTI<br>*Attorney General and Reporter of Tennessee* |
| KEN PAXTON<br>*Attorney General of Texas* | DEREK E. BROWN<br>*Attorney General of Utah* |
| | JOHN B. MCCUSKEY<br>*Attorney General of West Virginia* |