UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10276-GAO

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL 3707; AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; and NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,
Plaintiffs,

v.

CHARLES EZELL, in his official capacity as Acting Director of the Office of Personnel and Management, and OFFICE OF PERSONNEL MANAGEMENT,
Defendants.

OPINION AND ORDER
February 12, 2025

O'TOOLE, D.J.

The plaintiffs, several labor unions representing federal employees, have moved to restrain the Office of Personnel Management ("OPM") and Charles Ezell, the acting director of OPM, from enforcing the deadline by which federal employees may accept OPM's "Fork in the Road" directive, which has been stylized by the plaintiffs as the "Fork Directive." That directive permitted certain federal employees in the executive branch to resign their positions effective September 30, 2025, but also permitted employees who took up the offer to cease active work in their respective agencies and still be paid their existing salaries through the end of the fiscal year. In addition, those employees would be free to pursue other remunerative employment outside of the executive branch if they wished.

On January 28, 2025, OPM sent an email to nearly all federal employees in the executive branch announcing the directive. As originally announced, the opportunity to accept the offer was

to expire as of February 6. (Fork in the Road, U.S. Office of Pers. Mgmt., https://www.opm.gov/fork.)

The plaintiffs commenced this action on February 4, 2025, seeking to challenge the legal basis of the directive through two claims asserted under the Administrative Procedure Act ("APA"). The next day, the plaintiffs moved for a temporary restraining order to stay the directive's February 6 closing. The defendants oppose this motion. On February 6, the Court ordered the defendants to refrain from enforcing the deadline until further order of the Court. A hearing on the merits of the motion was held on February 10.

A plaintiff seeking a temporary restraining order or a preliminary injunction must establish four familiar elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the plaintiff in the absence of preliminary relief, (3) a balance of pertinent equities tips in plaintiff's favor, and (4) that the requested injunction would be consistent with the public interest. Together Emps. v. Mass. Gen. Brigham Inc., 32 F.4th 82, 85 (1st Cir. 2022) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). The last two factors "merge when the Government is the party opposing the preliminary injunctions." Nken v. Holder, 556 U.S. 418, 435 (2009). Here, the plaintiffs have not established that they are likely to succeed on the merits.

The plaintiffs are unable to succeed on the merits of their two APA claims because they lack Article III standing and because this Court does not have subject matter jurisdiction over the claims asserted.

First, the unions lack standing to challenge the directive. Standing requires the plaintiffs to be more than "mere bystander[s]" and instead requires a "personal stake in the dispute." Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quotations omitted). Further, the Supreme Court recently held that an organization that is not directly affected by an agency's

actions cannot establish standing simply by "divert[ing] its resources in response to a defendant's actions." Id. at 395. The plaintiffs cannot manufacture standing through self-inflicted harms. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013).

The plaintiffs here are not directly impacted by the directive. Instead, they allege that the directive subjects them to upstream effects including a diversion of resources to answer members' questions about the directive, a potential loss of membership, and possible reputational harm. The unions do not have the required direct stake in the Fork Directive, but are challenging a policy that affects others, specifically executive branch employees. This is not sufficient. Just as the Court found that the plaintiffs in Hippocratic Medicine could not spend their way into standing, neither can the plaintiffs in this case establish standing by choosing to divert resources towards "respond[ing] to tremendous uncertainty created by OPM's actions" and away from other union priorities. (Pls.' Mem. in Supp. of TRO 17.) Moreover, a loss of membership dues to the unions is not certain before the September 30th deadline.

Second, this Court lacks subject matter jurisdiction to consider the plaintiffs' pleaded claims. While not binding on this Court, the decision in Am. Fed'n of Gov't Emps., AFL-CIO v. Trump ("AFGE") is instructive. 929 F.3d 748 (D.C. Cir. 2019). In that case, the court held that the plaintiff-unions' claims fell within the Federal Service Labor-Management Relations Statute's ("FSL-MRS") scheme and therefore the district court lacked jurisdiction to hear the case. Id. at 754. In so deciding, the court walked through the two-part Thunder Basin framework. Id. ("Under that framework, Congress intended that a litigant proceed exclusively through a statutory scheme . . . when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." (citations and quotations omitted)).

3

The D.C. Court of Appeals ruled that the first Thunder Basin step was satisfied because the FSL-MRS "provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims." Id. at 755 (quoting Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force, 716 F.3d 633, 638 (D.C. Cir. 2013)). This is also the case here. Congress intended for the FSL-MRS and the Civil Service Reform Act of 1978 ("CSRA"), of which the FSL-MRS is a part, to provide the exclusive procedures for disputes involving employees and their federal employers and disputes between unions representing federal employees and the federal government. According to this complex scheme, disputes must first be administratively exhausted before the employing agency and the relevant administrative review board and any further challenges are properly heard in a court of appeals. See id. at 752 (citing 5 U.S.C. §§ 7105(a), 7123(a), (c)); 5 U.S.C. § 7703(b). Therefore, the first Thunder Basin step is satisfied because Congress intended the FSL-MRS and CSRA to preclude district court review.

The second Thunder Basin step involves determining whether the plaintiffs' claims are of the type Congress intended for review within the statutory scheme. Again, the AFGE decision is illustrative. In that case, the court found that the plaintiff-unions' claims were of a type intended for review by the circuit court because (1) the unions had the possibility of meaningful judicial review even if they were required to go through the statutory scheme; (2) the claims were not "wholly collateral to the statutory scheme;" and, (3) the claims were not beyond the reviewing agency's expertise. AFGE, 929 F.3d at 755.

The two APA claims alleged in this case are the type of challenges Congress intended for review within the statutory scheme, which provides for "administrative and judicial review." See id. at 752; Parrott v. Merit Sys. Prot. Bd., 519 F.3d 1328, 1334–35 (Fed. Cir. 2008) (reviewing a Merit Systems Protection Board decision regarding an allegedly involuntary resignation).

4

Aggrieved employees can bring claims through the administrative process. That the unions themselves may be foreclosed from this administrative process does not mean that adequate judicial review is lacking. See AFGE, 929 F.3d at 756; cf. Sackett v. EPA, 566 U.S. 120, 130 (2012) ("Where a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not subject to the administrative process, is strong."). The second and third factors are also satisfied. See Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012) (finding that a constitutional question was within the agency's expertise because threshold questions about employment and routine statutory interpretations may be "brought to bear" to resolve the challenge); Sec'y of Air Force, 716 F.3d at 638 ("[T]he fact that National AFGE may not pursue a claim through the CSRA does not mean that it has access to the courts. Rather, it means that National AFGE may not raise the claim at all.").

For the foregoing reasons the temporary restraining order previously entered is DISSOLVED and further preliminary injunctive relief is DENIED.

It is SO ORDERED.

     /s/ George A. O'Toole, Jr.  
     United States District Judge